IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| AZIM ABDUL JAGHOORI, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No.: 1:11-cv-1076 |
| ) | |
| ENRIQUE LUCERO, *et al.*, ) | |
| ) | |
| Respondents. ) | |

## MEMORANDUM OPINION

Petitioner Azim Abdul Jaghoori, a native of Afghanistan and Lawful Permanent Resident of the United States, is currently detained by United States Immigration and Customs Enforcement ("ICE") and housed at Hampton Roads Regional Jail. Jaghoori filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241 on October 5, 2011. Respondents filed their opposition to the petition on February 6, 2012. On February 10, 2012, Petitioner filed his rebuttal. For the reasons that follow, Jaghoori's petition will be granted in part. The Court directs an immigration judge to provide Jaghoori with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a)(2) to determine if he is a flight risk or a danger to the community.

## BACKGROUND

Petitioner, an Afghan national, entered the United States as a refugee on April 25, 1989, at the age of twelve. Pet. ¶¶ 8-9, Resp. Ex. 1. Jaghoori became a Lawful Permanent Resident the same day. Pet. ¶ 10. Jaghoori has several criminal convictions in Virginia. On February 27, 1995, Petitioner was charged of credit card theft, in violation of Va. Code § 18.2-192. He pleaded guilty and was convicted of the charge on July 14, 1995. Pet. ¶ 13. He received a ninety-day sentence, which was suspended conditioned upon community service and good behavior. *Id.* On

April 9, 1997, Jaghoori was convicted of misdemeanor obstruction of justice in violation of Va. Code § 18.2-460. Resp. Ex. 1. Petitioner was convicted of a DUI/Third Offense, in violation of Va. Code § 18.2-266, on May 11, 2006. *Id.* He received a one year sentence, with all but ninety days suspended, two years of probation, and a $2500.00 fine, along with substance abuse screening. *Id.* Lastly, Petitioner pleaded guilty to prescription fraud on September 27, 2010, in violation of Va. Code § 18.2-258.1. *Id.* On March 22, 2011, he was sentenced to two years imprisonment, which the judge suspended, and was placed on probation for two years. Pet. ¶ 21.

Petitioner traveled outside the United States in 2009. Upon reentry, he was placed in removal proceedings. Pet. ¶¶ 14-15. On November 3, 2009, the Department of Homeland Security filed a Notice to Appear, a document that commences removal proceedings. Pet. ¶ 16. The Notice to Appear charged Petitioner as removable for committing a crime involving moral turpitude, the 1995 credit card theft, within five years of admission. Pet. ¶ 17. This charge was ultimately withdrawn as the crime did not occur within the five year window. Pet. ¶ 18. Nonetheless, as the result of the 2010 prescription fraud conviction, Petitioner was again charged as removable. This time, the charge arose under two separate grounds: (1) committing two crimes involving moral turpitude after admission and (2) conviction of a drug offense. Pet. ¶ 23. ICE officials arrested Petitioner on September 14, 2011, nearly one year after his guilty plea in the Prescription Fraud offense and almost six months following his sentencing thereon. Resp. Ex. 1. He has been detained at Hampton Roads Regional Jail in Portsmouth, Virginia since that date. Pet. ¶ 6.

Jaghoori filed the § 2241 Petition on October 5, 2011. Petitioner maintains he is not subject to mandatory pre-removal detention under 8 U.S.C. § 1226(c) because he was not taken

into custody when he was released from state custody following his criminal proceeding. Instead, he requests an individualized bond hearing pursuant to 8 U.S.C. § 1226(a).

## ANALYSIS

Petitioner maintains that his mandatory detention is improper under 8 U.S.C. § 1226(c).[1] Section 1226(c)(1) provides:

> (c) Detention of criminal aliens
> (1) Custody
> The Attorney General shall take into custody any alien who—
>
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence [sic] to a term of imprisonment of at least 1 year, or
>
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> *when the alien is released*, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c) (emphases added). It is undisputed that Petitioner falls in the class of aliens deportable under 1226(c)(1)(B). The dispute lies in the interpretation of "when the alien is

---

[1] 8 U.S.C. § 1226(c) is the codification of the Immigration and Nationality Act ("INA") 236(c).

released." To date, no circuit court has explicitly addressed the issue.[2] Petitioner argues the statutory language is unambiguous: ICE must take aliens into custody "when" or immediately upon their "release." Respondents maintain the statute is ambiguous and that, under *Chevron*, this Court should defer to the Bureau of Immigration Appeals' ("BIA") reasonable interpretation that the statute mandates detention at any time after release from custody. *See Chevron U.S.A. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837 (1984); *Matter of Rojas*, 23 I. & N. Dec. 117, 127 (B.I.A. 2001) (interpreting section 1226(c)'s mandatory detention to apply even if aliens are not taken into ICE custody immediately upon their release from state custody). The Court sides with Petitioner.

Under *Chevron*'s two-step analysis, the Court first asks whether "Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 448 (1987) (quoting *Chevron*, 467 U.S. at 843 n.9). If the Court fails in its initial endeavor and cannot ascertain unambiguous Congressional intent, it proceeds to the second step of the *Chevron* analysis. *See Chevron*, 467 U.S. at 843. Step two considers whether the BIA's interpretation is "based on a permissible construction of the statute." *Id.* The Court need not

---

[2] There are two cases in this district that are pending appeal. *Pasicov v. Holder*, No. 1:11cv487, slip op. (E.D. Va. May 20, 2011) (Trenga, J.); *Hosh v. Lucero*, No. 1:11cv464, 2011 WL 1871222 (E.D. Va. May 16, 2011) (Trenga, J.). Additionally, the First Circuit has interpreted the "when . . . released" language in a different context. *See Saysana v. Gillen*, 590 F.3d 7 (1st Cir. 2009). The court rejected the government's contention that mandatory detention applies "whenever an alien, previously convicted of an offense that falls within [1226](c)(1)(A)-(D), is released from *any* criminal custody regardless of the reason for that detention." *Id.* at 11 (emphasis original). The Court concluded "[t]he statutory language embodies the judgment of Congress that such an individual should not be returned to the community pending the disposition of removal proceedings." *Id.* at 13. Though the *Sayana* court addressed a different issue and their opinion was informed by factors not present here, such as the Congressional desire not to apply the statute retroactively, courts have found *Sayana*'s reasoning to support Petitioner's interpretation. *See, e.g., Christie v. Elwood*, No.11-7070, 2012 WL 266454, at *8 (D.N.J. Jan. 30, 2012).

4

reach the second step of the *Chevron* analysis in this instance; the clear and unambiguous language of the statute supports Petitioner's reading.

The Court finds the clear and unambiguous language of the statute requires the alien to be taken into custody "when . . . released" from state custody for the underlying offense. 8 U.S.C. § 1226(c). Every court in this district to address the issue shares this view. *See Ortiz v. Lucero*, No. 1:11cv728, slip op. at 4 (E.D. Va. Dec. 20, 2011) (Lee, J.) ("[A]liens who are not arrested and detained under INA § 236 for some extended period of time following their release from state custody are not subject to mandatory detention under § 236(c)."); *Keo v. Lucero*, No. 1:11cv614, 2011 WL 2746182, at *5 (E.D. Va. July 13, 2011) (Cacheris, J.) (finding the plain reading indicates the statute is "inapplicable to an alien, such as the Petitioner, who was taken into custody long after being released from state incarceration."); *Hosh*, 2011 WL 1871222, at *4 ("[M]andatory detention under 8 U.S.C. § 1226(c)(2) is not required for an alien . . . who was taken into custody long after any release from state custody."); *Bracamontes v. Desanti*, No. 2:09cv480, 2010 WL 2942760 (E.D. Va. June 16, 2010) (Miller, J.), *adopted by* 2010 WL 2942757 (E.D. Va. July, 26 2010) (Jackson, J.) (holding an alien, who was not detained until eight years after his release from state custody, was not subject to mandatory detention and was entitled to an individualized bond hearing); *Waffi v. Loiselle*, 527 F. Supp. 2d 480, 488 (E.D. Va. 2007) (Brinkema, J.) (finding the "mandatory detention statute, section 236(c)(1) of the INA, does not apply to an alien such as petitioner, who has been taken into immigration custody well over a month after the release from state custody"); *accord Pasicov*, No. 1:11cv487, slip op. at 2 ("This Court has consistently held that aliens who are released from state custody, but not taken into immigration custody for an extended period of time after their release, are entitled to an

5

individualized bond hearing."); *Cummings v. Holder*, No. 1:10cv1114, slip op. at 3 (E.D. Va. Jan. 14, 2011) (Trenga, J.) (same).

Our district is not alone in this interpretation. Indeed, it is a view shared by the majority of district courts considering the issue. *See, e.g., Parfait v. Holder*, No. 11-4877, 2011 WL 4829391, at *6 (D.N.J. Oct. 11, 2011) ("The command that 'the Attorney General shall take into custody any alien [specified in this section] when the alien is released' means just what it says, i.e., the Attorney General shall take the alien into custody when the alien is released."); *Louisaire v. Muller*, 758 F. Supp. 2d 229, 236 (S.D.N.Y. 2010) ("*Matter of Rojas*, however, is wrong as a matter of law and contrary to the plain language of the statute. The clear purpose of § 1226(c)(1) is to authorize the mandatory detention of immigrants who have committed offenses enumerated within § 1226(c)(1)(A)-(D) *immediately* upon their release") (emphasis original).[3] However, the BIA and a minority of district courts disagree. *See, e.g., Matter of Rojas*, 23 I. & N. Dec. at 127.[4] The Court joins every court in this district, numerous courts outside this district, and the *Rojas* dissent in finding the *Rojas* majority's reasoning unavailing.

The various courts adopting this view have espoused several bases for so doing. This Court takes the time to highlight four that are particularly persuasive. First, the ordinary meaning of the language at issue supports Jaghoori's reading. *See Cardoza-Fonseca*, 480 U.S. at 431 (finding the "ordinary and obvious meaning of the phrase is not to be lightly discounted."). "The

---

[3] *See also Christie*, 2012 WL 266454, at *8; *Rosario v. Prindle*, No. 11-217, 2011 WL 6942560 (E.D. Ky. Nov. 28, 2011), *adopted by* 2012 WL 12920 (E.D. Ky. Jan. 4, 2012); *Beckford v. Aviles*, No. 10-2035, 2011 WL 3515933 (D.N.J. Aug. 9, 2011); *Sylvain v. Holder*, No. 11-3006, 2011 WL 2580506 (D.N.J. June 28, 2011); *Khodr v. Adduci*, 697 F. Supp. 2d 774 (E.D. Mich. 2010); *Burns v. Cicchi*, 702 F. Supp. 2d 281, 288-94 (D.N.J. 2010); *Oscar v. Gillen*, 595 F. Supp. 2d 166, 169-70 (D.Mass.2009); *Scarlett v. U.S. Dept. of Homeland Sec.*, 632 F.Supp.2d 214, 218-20 (W.D.N.Y.2009); *Quezada–Bucio v. Ridge*, 317 F.Supp.2d 1221, 1229-31 (W.D. Wash. 2004).
[4] *See, e.g., Guillaume v. Muller*, No. 11 Civ 8819, 2012 WL 383939 (S.D.N.Y. Feb. 7, 2012); *Hernandez v. Sabol*, ---F. Supp. 2d. ---, 2011 WL 4949003 (M.D. Pa. Oct. 18, 2011); *Garcia Valles v. Rawson*, No. 11-C-0811, 2011 WL 4729833 (E.D. Wis. Oct. 7, 2011); *Diaz v. Muller*, No. 11-4029, 2011 WL 3422856 (D.N.J. Aug. 4, 2011); *Gomez v. Napolitano*, 11 Civ 1350, 2011 WL 2224768 (S.D.N.Y. May 31, 2011); *Sulayao v. Shanahan*, No. 09 Civ 7347, 2009 WL 3003188 (S.D.N.Y. Sept. 15, 2009); *Saucedo-Tellez v. Perryman*, 55 F. Supp. 2d 882, 884-85 (N.D. Ill. 1999).

term 'when' includes the characteristic of 'immediacy,' referring in its primary conjunctive sense, to action or activity occurring 'at the time that' or 'as soon as' other action has ceased or begun." *Waffi*, 527 F. Supp. 2d at 488 (citing 20 The Oxford English Dictionary 209 (2d ed. 1989); The American Heritage Dictionary of the English Language (4th ed. 2000)). "Additionally, it would be contrary to the plain language of section 236(c)'s command that the Attorney General take into immigration custody certain criminal aliens 'when' those aliens are released from state custody to include aliens who had 'already' been released from state custody." *Id.*; *see also Matter of Rojas*, 23 I. & N. Dec. at 139 (Rosenberg, J. dissenting) ("The stretch of interpretation required by the majority's construction is not supported by the plain language of the statute and is unreasonable.").

Second, and relatedly, reading the term "when" to denote "anytime" renders its inclusion surplusage. *See, e.g., Babbit v. Sweet Home Chapter*, 515 U.S. 687, 698 (1995) (Courts are reluctant "to treat statutory terms as surplusage"). As Judge Cacheris noted, "to read the phrase 'when the alien is released' as applying to anytime—even 50 years—after the alien is released is essentially to read the phrase out of the statute." *Keo*, 2011 WL 2746182, at *3.

Third, the Court's reading finds support in the statute's purpose. As the government notes, Congress amended the Immigration and Nationalization Act in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, which eliminated "Executive Branch discretion to release on bond during the pendency of removal proceedings those aliens Congress deemed most dangerous and inimical to national security." Resp. at 5; *see Denmore v. Kim*, 538 U.S. 510, 518-20 (2003) (observing Congressional concern that "deportable criminal aliens who remained in the United States often committed more crimes before being removed."). The government's construction of the statute is inconsistent with the statutory purpose they identified

in their briefing. As Judge Trenga put it, "reading out of the statute the 'when . . . released' language of Section 1226(c) is inconsistent with the perceived Congressional objective since it vitiates the clear Congressional command to the Attorney General to act in a timely manner in order to prevent a designated alien from returning to the community before deportation." *Hosh*, 2011 WL 1871222, at *3. Put differently, by mandating detention of certain aliens during their removal proceedings, Congress sought to prevent dangerous aliens from absconding before they could be deported. Given this purpose, Congress "must have wanted ICE to detain these aliens *before* they could abscond and potentially commit more crimes, not whenever ICE happened to get around to it." *Keo*, 2011 WL 2746182, at *3 (emphasis original).

Finally, the Court's duty to avoid construing a statute in a manner that would lead to an absurd result also supports Petitioner's interpretation. "[A] court, must, if possible, interpret statutes to avoid absurd results." *Aremu v. DHS*, 450 F.3d 578, 583 (4th Cir. 2006). The government maintains that adherence to the petitioner's view would lead to an absurd result. The Court disagrees and finds the opposite to be true—the risk of an absurd result occurs under the government's reading. Respondent contends that it would constitute an "absurd result" to require ICE authorities to wait at the jailhouse steps and detain prisoners immediately upon their release. Resp. at 16. However, Congress mandated ICE do just that—detain a limited class of deportable aliens immediately to ensure they cannot become a danger to the community or vanish before their removal.

ICE also has a tool at its disposal to avoid waiting at the jailhouse steps. ICE routinely places immigration detainers on individuals in state and local custody. A detainer mitigates or potentially eliminates the burden of waiting on the jailhouse steps in two ways. First, ICE is notified when individuals under detainer are nearing release. *See* 8 C.F.R. § 287.7(a). Second,

individuals under an immigration detainer can be held in local custody for an additional forty-eight hours following their release. *See* 8 C.F.R. § 287.7(d). This combination of notice and a forty-eight hour grace period stifles Respondents' cries that Petitioner's reading leads to an absurd result.

Respondents' position is further undermined by the structure of Section 1226. Notably, requiring ICE to comply with the plain meaning of section 1226(c) before imposing mandatory detention does not leave ICE without recourse. ICE may still detain aliens considered dangerous or a flight risk via the Attorney General's discretionary authority under section 1226(a). *See Hosh*, 2011 WL 1871222, at *3 ("Nor does the Court's reading of this unambiguous statute lead to an unreasonable result that threatens public safety since immigration officials have wide latitude and discretion in determining within the context of a hearing held pursuant to Section 1226(a) whether and under what conditions release should occur."). As such, any illusion of absurdity that results from Petitioner's reading is assuaged by section 1226(c)'s plain language, ICE's ability to use an immigration detainer, and the remedy provided in section 1226(a).

A seemingly more absurd result would occur under the government's reading of 1226(c). Under the government's reasoning, despite the Congressional mandate that ICE take this limited class of aliens into detention before they can disappear, ICE could wait indefinitely and detain aliens carved out for mandatory detention at their leisure, at any point in the future. *See Keo*, 2011 WL 2746182, at *4 (rejecting the government's reasoning because it would allow ICE to "wait as long as it wants—here eight years, in another case perhaps 50—before following Congress's directive, with no difference in outcome."). Unfortunately, lengthy delay that borders upon absurdity is not merely theoretical. Several courts addressing the issue have encountered individuals detained years following their release. *See, e.g., Christie*, 2012 WL 266454 (twelve

years); *Bracamontes*, 2010 WL 2942760 (eight years). This near-absurdity runs counter to the plain meaning and purpose of section 1226(c) and provides yet an additional reason that Petitioner correctly interprets section 1226(c) to require immediate detention upon an alien's release.

The Court denies Petitioner's fee request under the Equal Access to Justice Act, 28 U.S.C. § 2412, without prejudice. *See, e.g.*, *Rosario*, 2011 WL 6942560, at *3 (finding Respondents' position was not substantially unjustified and denying request for fees given the lack of circuit court precedent on the issue and BIA's decision in *Matter of Rojas*).

## CONCLUSION

This Court thus grants the Writ of Habeas Corpus in part and directs that an Immigration Judge provide Jaghoori with an individualized bond hearing, to determine if he is a danger to the community or flight risk pursuant to 8 U.S.C. § 1226(a), within 15 days of this Opinion and its accompanying Order. The Court also orders Respondents to file a notification with the Court that Petitioner has received an appropriate individualized bond determination. Petitioner's request for fees is denied without prejudice.

An appropriate Order will issue.

February 22, 2012
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge